

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 8, 2026**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| **In re:** | § | **Chapter 7** |
|  | § |  |
| **Stillwater Abbott Development, LLC** | § | **Case No. 24-30097** |
|  | § |  |
| **Debtor.** | § |  |
|  | § |  |
|  | § |  |
|  | § |  |
| **Mondara Condominiums Association, Inc.,** | § |  |
|  | § |  |
|  | § |  |
| **Plaintiff,** | § |  |
|  | § |  |
| **v.** | § | **Adv. Pro. No. 24-03002** |
|  | § |  |
| **Stillwater Abbott Development, LLC et al.,** | § |  |
|  | § |  |
|  | § |  |
| **Defendants.** | § |  |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO RECONSIDER, GRANTING IN PART DEFENDANTS' MOTION TO CLARIFY, AND GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR CORRECTION

1

Before the Court are several motions following the conclusion of a trial, and entry of a final judgment, based on the *Plaintiff's Fourth Amended Petition*[1] (the "**Complaint**")[2] filed by Plaintiff Mondara Condominiums Association, Inc. (the "**Plaintiff**") against Defendants Stillwater Abbott Development, LLC ("**Stillwater Development**" or the "**Debtor**"), Stillwater Capital Investments, LLC ("**Stillwater Capital**"), Stillwater Abbott Management, LLC ("**Stillwater Management**"), Robert C. Elliott, individually ("**Elliott**"), Aaron Sherman a/k/a Robert A. Sherman, individually ("**Sherman**"), and Richard Coady, individually ("**Coady**", and, collectively, the "**Defendants**")[3].

First, the Defendants filed a *Motion to Clarify Non-Final Judgment Under Federal Rule of Civil Procedure 54(b) and Brief in Support Thereof* (the "**Motion to Clarify**") on December 27, 2025 [ECF No. 178]. Second, the Defendants filed a *Motion Under Federal Rules of Civil Procedure 52 and 59* and *Brief in Support* on December 30, 2025 (collectively, the "**Motion to Reconsider**") [ECF Nos. 179–81].[4] Finally, the Plaintiff filed an *Unopposed Motion for Correction Under Federal Rule of Civil Procedure 60* (the "**Motion for Correction**", and, together with the Motion to Clarify and Motion to Reconsider, the "**Motions**") on March 27, 2026 [ECF No. 186].

---

[1] Although the Complaint names Stillwater GC as a Defendant, the Court notes that Stillwater GC is not a Defendant in this case, and that the Complaint was originally filed in connection with a state court trial between the parties in the 95th Judicial District, Dallas County, in Cause No. DC-20-07653. *See* ECF No. 1, Ex. 2, 410.

[2] By its Complaint, the Plaintiff sought a judgment with regard to the following claims: (1) Negligence against Stillwater Capital and Stillwater Management; (2) Breach of Express and Implied Warranties against Stillwater Capital and Stillwater Management; (3) Negligent Misrepresentation against all Defendants; and (4) Violations of the Texas Deceptive Trade Practices Act (the "**DTPA**", and collectively with (1)–(3), the "**Construction Defect Claims**") against all Defendants.

[3] The Court notes that it issued its *Order Granting Joint Motion to Compromise Controversy Under Rule 9019 Between the Trustee and Plaintiff Mondara Condominiums Association, Inc*. on November 21, 2024 (the "**9019 Order**"), in Case No. 24-03002 [ECF No. 74], wherein it approved a Settlement and Release Agreement between Daniel J. Sherman—the duly-appointed Chapter 7 Trustee (the "**Trustee**")—on behalf of the Debtor's estate, and the Plaintiff, resolving the Plaintiff's claims in this Adversary Proceeding as they pertain solely to Stillwater Development.

[4] For clarity, the Court notes that the Defendants filed two separate *Motions Under Rules of Civil Procedure 52 and 59* at ECF Nos. 179 and 180. Given that the Motions are identical to each other and the Brief in Support at ECF No. 181 addresses both Motions, the Court need not address these filings separately.

Subsequently, the Plaintiff filed a *Response to Defendants' Motion to Clarify Non-Final Judgment Under Federal Rule of Civil Procedure 54(b)* (the "**Response**") on January 8, 2026 [ECF No. 183]. Additionally, upon request by the Court for limited briefing with respect to three issues raised by the Defendants in the Motion to Reconsider, the Plaintiff filed a *Limited Brief in Opposition to Defendants' Motion Under Federal Rules of Civil Procedure 52 and 59* (the "**Limited Objection**") on January 30, 2026 [ECF No. 184].

As previously stated, a trial was conducted in this Court, comprised of two parts: (1) the liability portion of the trial, which took place from October 28, 2024, to November 1, 2024, and on December 16 and 18, 2024 (together, the "**Liability Trial**"); and (2) the damages portion of the trial which took place on September 15 and 16, 2025 (the "**Damages Trial**"). Following the Liability Trial, the Court entered a *Memorandum Opinion, Findings of Fact and Conclusions of Law* (the "**Liability Decision**") on June 24, 2025 [ECF No. 133], in which the Court found Defendants Elliott, Stillwater Capital, and Stillwater Management jointly and severally liable for: (1) negligent misrepresentation under Texas common law; (2) violations of § 17.46(b)(2) and(b)(5) of the DTPA[5]; (3) breach of warranty under § 17.50 of the DTPA; and (4) unconscionable actions under § 17.50 of the DTPA.[6]

Following the Damages Trial, the Court entered a *Memorandum Opinion Awarding Plaintiff Damages and Attorney's Fees* (the "**Damages Decision**") on December 16, 2025 [ECF

---

[5] The Court notes that in the Original Rulings, the Court made an incorrect finding of liability with respect to § 17.46(b)(7) of the DTPA. Pursuant to this Order, the Court will further amend the Original Rulings to remove any finding of liability under § 17.46(b)(7), specifically.

[6] The Plaintiff has brought additional claims against the Defendants, respectively, for (1) Fraud, Fraudulent Concealment, and Estoppel; (2) Breach of Fiduciary Duty; (3) LLC Member Liability/Alter Ego; (4) Fraudulent Transfers; and (5) Civil Conspiracy (the "**Fraud Claims**"). *See* ECF No. 90, 3–4. As part of its *Order Denying Motion for Relief of Stay and Plaintiff's Amended Motion for Remand and Abstention*, the Court ordered that the Construction Defect Claims and the Fraud Claims remain bifurcated for trial purposes, and that the Court would address the issue of remand or withdrawal of the reference of the Fraud Claims after its decision as to the Construction Defect Claims following this trial.

No. 174], in which the Court awarded the Plaintiff, after reduction of $3,817,999 in credits pursuant to various settlement agreements: (1) $5,073,412.38 in actual damages and cost of repair and associated damages, which were then doubled to $10,146.824.76 pursuant to the Defendants' knowing violation of the DTPA; (2) $1,106,580 in attorney's fees; and (3) $62,661.58 in recoverable costs, totaling $11,316,066.30. On December 16, 2025, the Court also entered a Final Judgment (together with the Liability Decision and the Damages Decision, the "**Original Rulings**") [ECF No. 175], summarizing the respective findings contained in the Liability Decision and the Damages Decision.[7]

The Motions, the Response, and the Limited Objection all pertain to the Original Rulings. The Court did not hold a hearing with respect to any of the Motions and hereby rules strictly based on the pleadings filed. After consideration of the Motions, the Court hereby **GRANTS IN PART** the Motion to Clarify filed by the Defendants. Additionally, the Court **GRANTS IN PART** the Motion to Reconsider filed by the Defendants. Finally, the Court **GRANTS** the Motion for Correction filed by the Plaintiff. The Court's analysis with respect to the three motions is contained herein.

I.   **JURISDICTION AND VENUE.**

This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. Although the Construction Defect Claims[8] do not constitute core proceedings under 28 U.S.C. § 157(b), the bankruptcy court has authority to adjudicate this matter pursuant to the United States District Court for the Northern District of Texas Miscellaneous Order No. 33, and more

---

[7] The Court hereby incorporates the respective findings of fact and conclusions of law contained in the Liability Decision, Damages Decision, and Final Judgment.
[8] Capitalized terms not defined herein shall adhere to the meanings ascribed to such terms in the Original Rulings.

specifically, all parties consented to this Court hearing this matter and determining the issues on a final basis, pursuant to 28 U.S.C. § 157(c)(2).[9]

## II.   **PROCEDURAL POSTURE**

The Court addresses each of the Motions outside of chronological order and instead in order of difficulty of the legal issues presented, from simplest to most complex. First, in the Motion for Correction, the Plaintiff requests that Court make two general corrections to the Original Rulings previously entered: (1) correcting Defendant Robert Elliott's name, as it is misspelled as "Robert Elliot" in all three Original Rulings but primarily the Final Judgment; and (2) correcting a mistake in the Final Judgment of Stillwater Management, in which the Court improperly referred to Stillwater Abbott Management, LLC as "Stillwater Management LLC". ECF No. 186 at 2; *see also* ECF No. 175 at 1–4.

Second, in the Motion to Clarify, the Defendants request that the Court, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure (the "**Rules**") and incorporated under Rule 7054(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), clarify that the Final Judgment is "interlocutory and non-final for purposes of appeal." ECF No. 178 at 1. In the Response, the Plaintiff contends that the Defendants incorrectly refer to the Final Judgment as a non-final ruling, and that the Motion to Clarify should be denied. ECF No. 183 at 1. However, the Plaintiff adds that, if the Court were to provide any clarification based upon the Defendants' request, an amendment to the Final Judgment with a finding that there was "no just reason for delay" would solidify the Final Judgment as final in nature. *Id.* at 2.

Finally, in the Motion to Reconsider, the Defendants provide fourteen (14) separate arguments for why, pursuant to Rules 52 and 59, the Court should: (1) amend the Original Rulings;

---

[9] *See* ECF No. 36 at 18–19 ("Notably, both the Plaintiff and Stillwater parties consent to this Court conducting a bench trial as to the Construction Defect Claims pursuant to 28 U.S.C. § 157(c)(2).").

(2) open, set aside, and/or alter the Final Judgment; (3) enter a new take nothing judgment on all of the Construction Defect Claims against the Defendants; and/or (4) grant such other relief to which the Defendants may be just entitled to. ECF No. 181 at 31. To be specific, the Defendants present the following reasons for why the Court should grant the relief requested therein:

1. The Court failed to credit the Defendants $5,625,001, pursuant to the 9019 Order, in the Damages Decision and Final Judgment.
2. The Texas Residential Construction Liability Act (the "**RCLA**") prohibits the award of exemplary damages under the DTPA.
3. The Court failed to apply the causation standard under the RCLA in consideration of the Plaintiff's DTPA causes of action.
4. The Court improperly found liability for breach of an implied warranty with respect to Stillwater Capital and Stillwater Management.
5. There is no evidence of reliance to support a finding or judgment for a violation of § 17.50(a)(1) of the DTPA.
6. There is insufficient evidence to support a finding or judgment for a breach of an express or implied warranty under § 17.50(a)(2) of the DTPA.
7. There is insufficient evidence to support a finding or judgment of unconscionable action or course of action committed by the Defendants in violation of § 17.50(a)(3) of the DTPA.
8. The Court improperly found that the Plaintiff, as an HOA, constitutes a "consumer" under § 17.45(4) of the DTPA.
9. The Court and the Plaintiff failed to identify which unit owners were the purported plaintiffs in this case.
10. The Court erred in finding/concluding that the Defendants waived the $500,000 exemption under § 17.49(g) of the DTPA.
11. The Court failed to apply the proportionate responsibility standard pursuant to § 33.002 of the Texas Civil Practice and Remedies Code.
12. Under Texas law, the economic loss rule bars the Plaintiff from recovering damages for the Construction Defect Claims.
13. The Court improperly found that the applicable statute of limitations did not bar the Plaintiff from recovering damages for the Construction Defect Claims.
14. The Court improperly awarded the Plaintiff attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

*Id.* at 8–31.

As previously stated, the Court requested limited briefing from the Plaintiff on three of the above-mentioned arguments by the Defendants: (1) whether the RCLA prohibits exemplary damages under the DTPA; (2) whether the Court improperly found liability for breach of an implied warranty against Stillwater Capital and Stillwater Management, specifically; and (3)

whether the Court was precluded from awarding the Plaintiff attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. *See generally* ECF No. 184. With this brief overview, the Court addresses each of the Motions in turn below.

## III.   STANDARD OF REVIEW

### A.  RULES 52 & 59

Rule 52(a)(6), made applicable in this case by Bankruptcy Rule 7052, states that a court's findings of fact "must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). Likewise, Rule 52(b) provides that, upon a party's motion filed no later than 28 days after entry of a judgment, a court may "amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Rule 59, made applicable by Bankruptcy Rule 9023, permits a party to move to "alter or amend a judgment" no later than 14 days after entry of the judgment. Fed. R. Civ. P. 59(e); *see also* Fed. R. Bankr. P. 9023(b) (establishing a 14-day window for a movant to file a motion either for a new trial or to alter or amend a bankruptcy court's judgment). At bottom, a Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)) (internal quotations omitted).

Courts generally use the same standard for both Rule 52(b) and Rule 59(e) motions. *Shenzen Synergy Digital Co., Ltd. v. Mingtel, Inc.*, Civ. Action No. 4:19-cv-00216, 2022 WL 2252585, at *2 (E.D. Tex. June 22, 2022); *see also Interstate Fire & Cas. Co. v. Catholic Diocese of El Paso*, 622 Fed. Appx. 418, 420 (5th Cir. 2015) (establishing that the Rule 59(e) and Rule 52(b) standards of review both involve determining whether the initial ruling involved a "clearly erroneous assessment of the evidence") (citation omitted) (internal quotations omitted).

Rule 52 and 59 motions serve a "limited role," and courts generally hold that altering, amending, or reconsidering a judgment under either rule to be an "extraordinary measure" that should be used sparingly. *E.g., Marshall v. Guerrero,* Civ. Action No. 4:14-CV-03438, 2025 WL 2963033, at *1 (S.D. Tex. Oct. 20, 2025). Such motions are not the proper vehicle for "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478–79; *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("Rule 59(e) motions are aimed at [reconsideration], not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before the judgment issued.").

Rather, Rule 52 and 59 motions serve the narrow purpose of allowing a party to either: (1) correct "manifest errors of law or fact"; or (2) present newly discovered evidence. *Templet*, 367 F.3d at 479 (citation omitted) (internal quotations omitted). The Fifth Circuit has defined manifest error to be one that is "plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp*., 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Recs.*, 370 F.3d 183, 195 (1st Cir. 2004)) (internal quotations omitted). Bankruptcy courts have generally held that establishing a manifest error of law or fact requires the moving party to show that "matters or controlling decisions were overlooked that might have materially affected the earlier ruling." *In re Bunting Bearings Corp*., 321 B.R. 420, 422 (Bankr. N.D. Ohio 2004).

At least in the Rule 59 context, the Fifth Circuit has traditionally kept two judicial imperatives in mind when tasked with evaluating such motions: (1) the need to bring finality to the current litigation; and (2) the need to render "just decisions on the basis of all the facts." *Templet*, 367 F.3d at 479. In other words, while a court will undoubtedly seek to render a just

8

decision on an appropriate basis, it is equally clear that the decision under reconsideration is not intended to function as a mere first draft, "subject to revision and reconsideration at a litigant's pleasure." *Shenzen*, 2022 WL 2252585 at *2 (citation omitted) (internal quotations omitted). Instead, "litigants are expected to present their strongest case when the matter is first considered. *Id.* (quoting *Louisiana v. Sprint Comms. Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995)).

### B.  RULE 54

Rule 54(b), which pertains to a judgment in connection with multiple claims and/or multiple parties states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties **only if the court expressly determines that there is no just reason for delay**. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added).

### C.  RULE 60

Rule 60(b), made applicable to bankruptcy proceedings by Bankruptcy Rule 9024, provides a narrow list of reasons to grant relief from a final judgment, order or proceeding:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1)  mistake, inadvertence, surprise, or excusable neglect;
> (2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)  the judgment is void;
> (5)  the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;
> (6)  any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

When analyzing an order under Rule 60(b), the Court may consider equitable principles and must attempt to balance the desire to achieve finality against the policy of resolving a dispute fully on the merits. *In re Spears*, 352 B.R. 79, 82 (Bankr. N.D. Tex. 2006). Furthermore, bankruptcy courts have broad discretion when deciding motions for relief under Rule 60(b). *In re South*, 647 B.R. 535, 537 (Bankr. E.D. Tex. 2023). That being said, the Fifth Circuit has stated that "relief under Rule 60(b) is considered an extraordinary remedy… [and that] '[t]he desire for a judicial process that is predictable mandates caution when reopening a judgment.'" *In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005) (internal citations omitted).

Rule 60(b)(1) allows relief for reasons of mistake, inadvertence, surprise or excusable neglect. Fed. R. Civ. P. 60(b)(1). Relief under 60(b)(1) is appropriate in two instances: (1) where a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order. *South*, 647 B.R. at 538.

## IV.   ANALYSIS

### A. MOTION FOR CORRECTION

Given that the Motion for Correction is unopposed, the Court hereby grants the Motion. Furthermore, as noted in the *Appendix in Support of Plaintiff's Unopposed Motion for Correction* filed by the Plaintiff on March 27, 2026 [ECF No. 187], the Court will hereby enter an amended Final Judgment in conjunction with entry of this Order, in which it will correct both the misspelling of Robert Elliott's name and the improper reference to "Stillwater Management, LLC" rather than

Stillwater Abbott Management, LLC as a Defendant. Likewise, the Court will correct the spelling

of Mr. Elliott's name in the Liability Decision and Damages Decision as well.[10]

Accordingly, the Court grants the Motion for Correction.

### B. MOTION TO CLARIFY

In the Motion to Clarify, the Defendants primarily take issue with the procedural posture

of the case following the entry of the Court's Original Rulings, namely the Final Judgment. ECF

No. 178 at 1. More specifically, the Defendants contend that, given that the Fraud Claims were

bifurcated from the Construction Defect Claims have not been tried or adjudicated, the Final

Judgment entered by the Court was improper under Rule 54(b). *Id.* at 2–3. According to the

Defendants, the Final Judgment, regardless of designation, is "non-final because it 'adjudicates

fewer than all claims or the rights and liability of fewer than all the parties.'" *Id*. at 4 (quoting Fed.

R. Civ. P. 54(b)). Therefore, the Defendants request that the Court "clarify and confirm" that the

Final Judgment, notwithstanding its title, is interlocutory in nature because the Court did not

adjudicate the Fraud Claims nor did adjudication occur with respect to several defendants who

were not named defendants in connection with the Construction Defect Claims.[11] *Id.*

In the Response, the Plaintiff contends that Rule 54(b) permits entry of a final judgment as

to one or more, but fewer than all, claims and/or parties "if there is no just reason for delay." ECF

---

[10] The Court undoubtedly appreciates the filing of the Motion for Correction, as well as the accompanying Appendix filed by the Plaintiff, which provides copies of the Court's Original Rulings, highlighting each and every instance where the Court misspelled Mr. Elliott's name. While the Court takes responsibility for the clerical error, its consistent misspelling of Mr. Elliott's name was unintentional. Rather, unbeknownst to the Court but seemingly known to the parties since the case's removal, the mistake was due in large part to the fact that Mr. Elliott's name is misspelled as a named Defendant in the *Notice of Removal* [ECF No. 1] filed by his counsel, from which this Adversary Proceeding was docketed. Moreover, Mr. Elliott's name is misspelled in the case headings on dozens of pleadings throughout the two-year lifespan of this case, including several pleadings filed by the Defendants' counsel and, ironically, the Plaintiff's own Motion for Correction and the Appendix. *See, e.g.*, ECF No. 186 at 1 (including a case heading that incorrectly references Defendant "Robert C. Elliot").

[11] The remaining defendants not party to the Construction Defect Claims are The Baumann Family Limited Partnership, The King Family Limited Partnership, Montgomery Capital Advisors, LLC, and Thomas A. Montgomery.

11

No. 183 at 2; *see also* Fed. R. Civ. P. 54(b). Accordingly, the Plaintiff contends that if the Court were to add language to the Final Judgment that establishes there is "no just reason for delay," the Court's Order would adhere to the requirements under Rule 54(b) and constitute a final judgment with respect to the Construction Defect Claims. ECF No. 183 at 2.

The Court agrees with the Plaintiff's reading of Rule 54(b), in that resolution of this issue can be achieved by amending the Final Judgment to include language that, based on the Court's Order, there is "no just reason for delay", and that the Final Judgment is, in fact, final in nature. It was the Court's intention for the Final Judgment to be final rather than interlocutory, as evidenced by the title, and it will include the additional language necessary in an amended Final Judgment to render the Order as such.

Therefore, the Motion to Clarify is denied in part to the extent the Defendants request the Court determine the Final Judgment to be interlocutory in nature. However, the Motion is granted in part to the extent that express language that there is no just cause for delay is appropriate to affirmatively establish the Final Judgment as final. Accordingly, the Court will enter an amended Final Judgment.

### C. MOTION TO RECONSIDER

As summarized above, the Defendants put forth a legion of arguments as to why the Court should reconsider the Liability Decision and Damages Decision with respect to several factual and legal determinations the Court made therein. However, not all of the points raised pack the same substantive punch. A good number of them are either the exact rehashing of legal theories and evidence that courts generally do not permit, or involve arguments that the Defendants could, or should, have raised over the course of nine days of trial between the Liability Trial and the Damages Trial, respectively. Likewise, several of the arguments serve as blatant attempts by the

Defendants to relitigate issues that the Court has already addressed, *ad nauseum*, over the span of enough pages to constitute a novella.

Given the range in merit with respect to the Defendants' arguments, and in consideration of the fact that the Court requested briefing from the Plaintiff contained in the Limited Objection, the Court will address the respective arguments chronologically and will provide due consideration of each argument as the Court deems sufficient in accordance with established authority. The Court's ruling with respect to each of the Defendants' arguments is as follows:

### 1. The Court should have deducted $5,625,001 in settlement credits based upon the allowed unsecured claim granted to the Plaintiff in the 9019 Order.

The Defendants' first argument is that the Court should have applied the $5,625,001 allowed general unsecured claim—pursuant to the settlement reached between the Plaintiff and the Trustee (on behalf of Stillwater Development) in the underlying bankruptcy case—as a dollar-for-dollar settlement credit to reduce the overall amount in damages owed to the Plaintiff. ECF No. 181 at 9–12; *see also* Case No. 24-30097, ECF No. 74. According to the Defendants, not only did the claims settled between Stillwater Development and the Plaintiff arise out of the same injury that the Plaintiff alleges against the Defendants in this case, but that the Court failed to adhere to its own Original Rulings in reducing the damages awarded to the Plaintiff pursuant to any settlements reached with third-parties. ECF No. 181 at 10.

More specifically, the Defendants argue that the settlement between the Plaintiff and Stillwater Development contains an unconditional promise "of value" to the Plaintiff in the form of a $5.6 million allowed unsecured claim in exchange for the Plaintiff dismissing its claims against Stillwater Development, specifically, with prejudice. *Id.* at 11 (quoting *Bay, Ltd. v. Mulvey*, 686 S.W.3d 401, 406 (Tex. 2024)). According to the Defendants, neither the unsecured nature of the $5.6 million claim nor the fact that any payment on the claim would be in the future alters its

13

application as a settlement credit that should be applied in this case. *Id.* Therefore, failing to apply the $5.6 million results in a potential double recovery for the Plaintiff, which the Defendants argue is prohibited under Texas law. *Id.* at 10–12. Finally, the Defendants also note that, in the Liability Decision, the Court mistakenly referred to the claim awarded to the Plaintiff in the 9019 Order as an "allowed secured claim" rather than an "allowed unsecured claim." *Id.* at 9 n.2; *see also* ECF No. 133 at 67 (incorrectly finding that the 9019 Order awarded an allowed "secured" claim to the Plaintiff in the underlying bankruptcy proceeding).

As a threshold matter, the Defendants are correct that the Court erred in referring to the $5.6 million claim awarded to the Plaintiff as a secured claim. As reflected in the settlement embodied in the *Joint Motion to Compromise Controversy Under Rule 9019 Between the Trustee and Plaintiff Mondara Condominiums Association, Inc*., subsequently approved by the Court in the 9019 Order, the Plaintiff received an "allowed general **unsecured** claim against the Debtor in the amount of $5,625,001." Case No. 24-30097, ECF No. 49 at 5 (emphasis added). Therefore, the Court will amend the Liability Decision to reflect the correct nature of the claim awarded to the Plaintiff.

However, the Court disagrees with the Defendants that the $5.6 claim awarded to the Plaintiff should be treated as a settlement credit and that the Court should reduce the actual damages award accordingly. The Defendants primarily rely on a single case to support this proposition—*Bay, Ltd. v. Mulvey*. ECF No. 181 at 11. The Defendants' reliance on *Bay* is largely unfounded. While the facts underlying *Bay* undoubtedly pertain to the relationship between settlement credits and the "one-satisfaction rule" under Texas law, the circumstances and arguments underlying the decision rendered in *Bay* are entirely inapposite to the instant case.

14

In *Bay*, the dispute at issue involved whether a particular agreement constituted a "settlement" for credit purposes when one party agreed to pay $1.9 million via $750 monthly payments to avoid foreclosure on his home. *See Bay*, 686 S.W.3d at 408. The Plaintiff in *Bay* argued that, even if the agreement constituted a settlement, it could not give rise to a settlement credit because the monthly amount owed constituted a "future obligation" and that the one-satisfaction rule "concerns itself only with amounts that have already been paid." *Id.* The Supreme Court of Texas ultimately held that the agreement constituted a settlement because the parties had agreed to end their disputes against one another in exchange for the promise by one side to make the monthly payments to the plaintiff. *Id.* at 409. Likewise, the court emphasized that it is indeed the amount of a settlement that is credited rather than what a party has "already received or speculates it may realize under a payment structure it negotiated." *Id.* In other words, regardless of the timing of a party's payment or whether the parties' settlement involves a "protracted payment schedule," such agreements adhere to the policy under Texas law of incentivizing "reasonable, prudent settlements." *Id.* at 411.

Here, however, the issue before the Court has never been whether the 9019 Order constituted a settlement between the Plaintiff and Stillwater Development, nor is it with respect to the timing of any payment to the Plaintiff on the allowed claim. Rather, the only issue is whether actual damages awarded to the Plaintiff against the remaining Defendants in this case should be reduced dollar-for-dollar to account for a $5.6 million settlement credit against a former defendant, i.e. Stillwater Development. The Court does not believe the Defendants are entitled to a settlement credit presently under these circumstances.

First, the one-satisfaction rule states that a plaintiff is entitled to "only one recovery for any damages suffered." *Id.* at 406. Here, the Defendants point to nothing in the record or the underlying

15

bankruptcy case that would establish that awarding the Plaintiff a general unsecured claim is providing the Plaintiff with a double recovery. At bottom, the Defendants misconstrue a payment or promise to pay and a "Claim"—a "right to payment" pursuant to § 101(5) of the Bankruptcy Code. *See* 11 U.S.C. § 101(5)(A). The Plaintiff's $5.6 general unsecured claim only provides the Plaintiff with a right to payment after the assets of the Debtor's estate have been liquidated and distributed based upon the priority of allowed claims, and nothing in the 9019 Order or the underlying settlement establishes a concrete **promise to pay** the Plaintiff $5.6 million. Notably, each of the settlement agreements reached between the Plaintiff and numerous third parties contains specific language that the third-party or former defendant promised or agreed to pay the Plaintiff a specific sum of money. *See generally* ECF No. 131-10 (compilation of previous settlement agreements reached between the Plaintiff and various third parties). Neither the 9019 Order, nor the terms of the underlying settlement agreed upon by the Plaintiff and Stillwater Development, contains any such language.

Second, the Defendants overlook several factual puzzle pieces that undermine their position, beginning with the fact that the Defendants' counsel directed the Debtor into bankruptcy as a litigation tactic to avoid the state court jury from being charged. *See* Case No. 24-30097, ECF No. 36-29, Ex. BB at 13:20–14:13 (transcript from the original state court litigation highlighting representations made by the Defendants' counsel, in which they stated that they had "no intent to file bankruptcy" until they were effectively denied an additional day prior to the jury charge). The Debtors were placed into bankruptcy with no liquid assets. *See* Case No. 24-30097, ECF No. 25 (Stillwater Development's Amended Schedule A/B, which, according to the Debtor, lists $0 in total assets of the estate). The Trustee's most recent report—issued on April 3, 2026 [Case No. 24-30097, ECF No. 79]—notes that the **only potential assets** are causes of action with an estimated

16

net value of **$110**. The Plaintiff—a general unsecured creditor—is only entitled to a *pro rata* share of the Debtor's remaining assets. The Defendants offer no reasonable basis for the proposition that the Plaintiff's *pro rata* recovery of its share causes of action yet to be filed or otherwise monetized constitutes a "double recovery" in violation of Texas law.

On the contrary, an allowed claim in a Chapter 7 case is simply a right to distribution in accordance with § 726 of the Bankruptcy Code. *See* 11 U.S.C. § 726. Numerous courts and commentators have noted that there is a distinct difference between the "value" of an allowed claim in "tiny bankruptcy dollars" versus **actual dollars**. *See In re Kelton Motors, Inc.*, 153 B.R. 417, n.14 (Bankr. D. Vt. 1993) ("'Tiny bankruptcy dollars' refers to the postpetition, [*pro rata*] distribution of estate assets to holders of valid claims."); *see also In re SunEdison, Inc.*, 557 B.R. 303 (Bankr. S.D.N.Y. 2016); *In re Com. Fin. Servs., Inc.*, 251 B.R. 397 (Bankr. N.D. Okla. 2000).

As it stands, the Plaintiff only has a right to a potential distribution in a currently insolvent estate. *See* Case No. 24-30097, ECF No. 49 at 14 (determining that "the Estate has no resources"). The settlement, approved by the Court in the 9019 Order, makes clear that the settlement is an avenue to "reduce to money the Estate's only assets [i.e., potential causes of action] in as economical way as possible." *Id*. at 14. The settlement itself is a "workable **method**" to "[create] a **potential** monetary return for creditors". *Id*. (Emphasis added). Equating the Plaintiff's "allowed claim" against a wholly insolvent estate to a full-fledged settlement credit is akin to equating a Powerball ticket to the jackpot. An allowed claim is effectively a "ticket" to a *pro rata* share of

whatever that estate ultimately pays out.[12] Yet the Defendants ask that they receive a **present** $5.6 million credit. Entitlement to a $5.6 million settlement credit under these facts would be entirely speculative and grossly inequitable. Nevertheless, the Defendants are entitled to a dollar-for-dollar settlement credit with respect to any distributions to which the Plaintiff actually becomes entitled.

Finally, the Court notes that its interpretation is in harmony with Section 33.012(b) of the Texas Civil Practice and Remedies Code, which entitles a defendant to a reduction of "the sum of dollar amounts of all settlements." Tex. Civ. Prac. & Rem. Code § 33.012(b). Again, the 9019 Order approved the settlement, which recognized that the allowed claim is not a dollar-for-dollar settlement payment, but merely an avenue to create a **potential monetary return** for creditors. Case No. 24-30097, ECF No. 49. The Defendants' argument transforms Chapter 33 from a shield into a sword for the Defendants to wield. Yet, the Defendants have provided no authority that a contrary interpretation by the Court is a manifest error of law or fact.

Therefore, the Court grants in part the Motion to Reconsider solely to the extent that the Court will correct its clerical error in the Liability Decision by incorrectly referring to the Plaintiff's claim an allowed secured claim. The Court will deny in part the remaining part of the Motion to Reconsider on this argument with respect to the Defendants' request of further settlement credits.

> ### 2. *The RCLA precludes the Court from awarding the Plaintiff exemplary damages.*

---

[12] A hypothetical may assist in understanding the Chapter 7 claim process. If the allowed claim is $5.6 million and, assuming *arguendo*, no other claims exist, the Plaintiff would receive 100% of the distributable estate recoveries **after** payment of the Trustee's professionals, and **after** the Trustee receives his statutory fee. *See generally* 11 U.S.C. § 726. If $1 million is recovered after litigation (which coincidentally the Plaintiff would fund under the settlement), the Plaintiff receives the net of $1 million, **less** the fees of the Trustee's legal professionals, accounting professionals, and his statutory fee. At best, under this hypothetical, the Court would estimate that the Plaintiff could receive $500,000.00, without consideration of its own legal fees to fund the litigation, years from today. The Court would further note that the other Defendants have actually filed claims against the Debtor's estate. *See* Case No. 24-30097, Proof of Claim Nos. 4-1, 5-1, 6-1 (proofs of claim filed by Mr. Elliott, Stillwater Capital, and Stillwater Management, respectively).

The Defendants' second argument is that the Court manifestly erred in awarding the Plaintiff exemplary damages based upon the Defendants' DTPA violation because the RCLA "precludes Plaintiff's recovery of any enhanced DTPA damages." ECF No. 181 at 13–14. The Defendants primarily rely upon the provision in § 27.002 that states "[t]o the extent of conflict between [the RCLA] and any other law, including the [DTPA] . . . or a common law cause of action, this chapter prevails." Tex. Prop. Code § 27.002(b). Therefore, the Defendants argue that an award of exemplary damages under the DTPA is in conflict with the RCLA; thus, the Court could not award the Plaintiff two times the amount of actual damages in the Original Rulings. ECF No. 181 at 13–14.

The Defendants assert that the RCLA "limits a claimant's recovery to specifically prescribed economic damages proximately caused by the construction defect," and thus any "additive damages" awarded by the Court do not fit within the six enumerated categories of economic damages. *Id.* (quoting *Timmerman v. Dale*, 397 S.W.3d 327, 331 (Tex. App.—Dallas 2013, pet. denied)). In other words, given that the function of the RCLA is to "modify causes of action that already exist by providing defenses and limiting damages," and that damages proximately caused by construction defects are compensatory in nature rather than exemplary, the purpose of the RCLA is to preclude recovery of exemplary damages that the Plaintiff would otherwise be entitled to under the DTPA. *Mitchell v. D.R. Horton-Emerald, Ltd.*, 579 S.W.3d 135, 137–38 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

The Plaintiff counters by arguing that § 27.004(g) of the RCLA restricts categories of economic damages and not punitive damages, and that the RCLA expressly excludes exemplary damages from the definition of economic damages. ECF No. 192 at 2–3; (citing *Design Tech Homes, Ltd. v. Maywald*, No. 09-11-00589-CV, 2013 WL 2732068, at *7 (Tex. App.—Beaumont

19

2013, pet. denied)). Likewise, the Plaintiff points to authority suggesting that the RCLA "does not preempt the DTPA" at all, but instead "clearly authorizes" DTPA-related causes of action so long as the RCLA's pre-suit requirements are met. *Id.* at 3 (quoting *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 405 (Tex. App.—Dallas 2006, no pet.)) (internal quotations omitted). Therefore, the Plaintiff argues that "there is no conflict between the RCLA and the DTPA regarding treble damages under the DTPA," and the Court properly awarded the Plaintiff exemplary damages because the Defendants knowingly violated § 17.50 of the DTPA. *Id.* at 4.

The resolution here is a close call, especially given the delicate balance between the respective purposes of the RCLA and the DTPA. However, the Court ultimately agrees with the Plaintiff for several reasons and finds that the RCLA does not prohibit or preclude the finding of exemplary damages under the DTPA based on these facts. Therefore, the Court finds that the Court's doubling of actual damages against the Defendants was not a manifest error of law or fact.

First, the Court is guided by a closer examination of the statutory language of both the RCLA and the DTPA, as well as the authority cited by the parties. Moreover, given that the relationship between the RCLA and the DTPA creates a reasonable level of ambiguity as to the statutes' application in a case such as this, the Court is further guided by the canons of statutory construction. *See Gen. Land Off. v. Biden*, 722 F. Supp. 3d 710, 739 (S.D. Tex. 2024) (echoing that, while courts should generally give the words in a statute their ordinary, plain meanings, the canons of construction "can be used to resolve remaining ambiguity").

Starting first with the RCLA, § 27.004(g) states that, in an action brought pursuant to the RCLA:

> the claimant may recover only the following economic damages proximately caused by a construction defect: (1) the reasonable cost of repairs necessary to cure any construction defect; (2) the reasonable and necessary cost for the replacement or repair of any damaged goods in the residence; (3) reasonable and necessary engineering and consulting fees; (4)

20

the reasonable expenses of temporary housing reasonably necessary during the repair period; (5) the reduction in current market value, if any, after the construction defect is repaired if the construction defect is a structural failure; and (6) reasonable and necessary attorney's fees.

Tex. Prop. Code § 27.004(g)(1)–(6) (amended Sept. 1, 2023).

Additionally, § 27.001 defines economic damages as "**compensatory damages** for pecuniary loss proximately caused by a construction defect. The term **does not include exemplary damages** or damages for bodily or personal injury, physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society." *Id.* at § 27.001(5) (amended Sept. 1, 2023) (emphasis added). Accordingly, the RCLA establishes that: (1) economic damages are expressly and exclusively defined as compensatory damages; and (2) the RCLA limits recovery of economic damages to six specific categories.

Contrary to the Defendants' argument, the RCLA does not, on its face, preclude exemplary damages under § 27.004(g), but instead provides that a claimant may recover "only the following economic damages," limited to the above-mentioned categories. The placement of "only" is crucial to the Court's interpretation, in that its placement **after** "recover" signals that the limitation is being placed not on the types of damages that a claimant may recover (as would be the case had "only" preceded "recover"), but instead on the **types of economic damages** that a claimant may recover. This construction accords with the plain meaning of "only", which *Merriam-Webster* defines, when used as an adverb, in one of two ways: (1) "a single fact or instance and nothing more or different"; or (2) "solely, exclusively." *Only*, merriam-webster.com, https://www.merriam-webster.com/dictionary/only (last visited May 6, 2026).

Moreover, the Supreme Court has consistently recognized that words are to be given "the meaning that proper grammar and usage would assign them," and that such rules should govern unless they "contradict legislative intent or purpose." *Nielsen v. Preap*, 586 U.S. 392, 408–09

21

(2019) (citation omitted) (internal quotations omitted). Here, the Court does not find that the interpretation provided above is discordant with any express legislative intent or purpose of the RCLA.[13]

This construction is further bolstered by a canon of construction frequently implemented by courts to determine the plain meaning of a given statute—the doctrine of *expressio unius est exclusio alterius* ("*expressio unius*"). *See e.g., Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 273 (Tex. 1999) (explaining that the doctrine of *expressio unius* states that the "expression of one implies the exclusion of others"). Contrary to the Defendants' position, the expression of a limitation on the economic damages that can be recovered under the RCLA, given the fact that the definition of economic damages expressly excludes exemplary damages, implies that there is no express limitation on exemplary damages as well. Therefore, while a claimant pursuing a construction defect cause of action may not recover economic damages beyond the prescribed categories in § 27.004(g), there is nothing in the statute that expressly limits recovery of exemplary damages, which, by definition, do not constitute economic damages under the RCLA.

Relatedly, as the Court of Appeals of Texas stated in *Sanders v. Construction Equity, Inc.*, the RCLA "does not mention exemplary damages" but instead states that "only those damages set forth in the statute are recoverable." 42 S.W.3d 364, 372 (Tex. App.—Beaumont 2001, pet. denied). The court also noted in *Sanders* that Texas common law provided "'no meaningful guidance' regarding whether the term 'damages' should be interpreted to include exemplary

---

[13] To illustrate this point, an analogous example is perhaps helpful. Keeping with the same sentence structure, there is a reasonable distinction between (1) a request to a friend to "buy only the following types of apples at the grocery store", and (2) asking that same friend to "only buy the following types of apples at the grocery store." The former can be reasonably interpreted to mean that any limitation on what the friend can purchase at the store is **solely** with respect to the type of apples, and the friend is therefore not precluded from buying other types of fruits. Alternatively, the latter implies that the only items the friend can purchase at the store are the types of apples on the list **and nothing more**. Here, the placement of "only" limits a specific category of items the friend can purchase, rather than broadly limiting what the friend can purchase period.

damages." *Id.* (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 892 (Tex. 2000)).

In *Auld*, the Supreme Court of Texas looked to legislative intent in holding that the term "damages"

did not include "exemplary damages" when reviewing a damages cap in a different statute. *Auld*,

34 S.W.3d at 892 (reviewing Tex. Rev. Civ. Stat. art. 4590i, § 11.02). Conversely, the legislative

history with respect to the RCLA provides little guidance. As articulated in *Sanders*:

> What we do have is an indication that [the] RCLA was intended to restrict [the] DTPA damages recoverable in a claim governed by [the] RCLA; but that does not answer the question of what is meant by 'damages' in the statute. *See* § 27.002. Despite the limitation of the guidance provided by the common law and the legislative history, we note that rather than compensating the injured party[,] exemplary damages serve the purpose of punishing the liable party and protecting the public. *See Owens-Corning Fiberglas v. Malone*, 972 S.W.2d 35, 39–40 (Tex. 1998). Furthermore, the recoverable, listed damages in [the] RCLA are all compensatory damages. *See* §§ 27.002(a), § 27.004(f). Considering the different purposes of exemplary and compensatory damages and considering the statute's purpose to compensate for such things as repair costs, we believe the term 'damages' within the language of the statute refers to compensatory damages, not exemplary damages. We hold that the statute does not bar recovery of exemplary damages. . . [the RCLA] is not a complete bar to their claims.

*Sanders*, 42 S.W.3d at 372.

The Court recognizes the alternative interpretation articulated in cases such as *Mitchell*.

579 S.W.3d at 139. The Court likewise agrees with the purpose of the RCLA stated in *Mitchell*,

which is to "create an 'appropriate balance' between the interests of contractors and homeowners

in response to perceived litigation abuse by homeowners." *Id.* (quoting *Timmerman*, 397 S.W.3d

at 330). The Court also notes that a large component of the broad interpretation of the RCLA

pertains to the previous version of § 27.001, which defined "construction defect" as "a **matter**

**concerning the design**, construction, or repair" of a residence. *See Timmerman*, 397 S.W.3d at

330–31 (interpreting § 27.001 to encompass claims that did not necessarily involve defective

construction or repair, so long as the claim arose out of a matter that concerned the construction or

repair of a residence) (emphasis added); *see also* Tex. Prop. Code § 27.001(4) (amended Sept. 1,

2023).

23

While the prior version of § 27.001 is undoubtedly applicable to this case,[14] the Court remains unconvinced that the Defendants' interpretation of the RCLA does not create an imbalance of its own, in which the limitations of the RCLA render the DTPA largely inert in cases of similar ilk. Taking the Defendants' argument to its logical conclusion, the RCLA would preempt all other statutes without identical wording. While the RCLA expressly provides that, to the extent it **conflicts** with the DTPA, the RCLA controls, the Court does not find the two statutes to be in conflict with each other with respect to exemplary damages. Put simply, the DTPA allows exemplary damages, and the RCLA limits types of compensatory damages. The fact that the RCLA does not provide any language allowing or prohibiting exemplary damages does not mean, in the Court's mind, that exemplary damages are inherently barred. The statutes are effectively ships passing in the night.

Indeed, holding otherwise would uproot the balance between the two and completely override the DTPA's liberal construction and express purpose of "protect[ing] consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty." Tex. Bus. & Com. Code § 17.44(a). Under the Defendants' interpretation, the RCLA would not simply place limitations on damages, but would function as a wholesale carve-out to the DTPA, in that so long as the Defendants' actions could be tied to the construction or repair of the Mondara, the Plaintiff could never recover exemplary damages, no matter how deceptive or misleading the Defendants' knowing violations turned out to be. The Defendants provide no basis for how all of the unlawful actions established in the Liability Decision are matters concerning the construction or repair of the Mondara (nor did they argue same at the Liability Trial). Thus, the Court does not find that it has manifestly erred in finding that there is no statutory conflict between

---

[14] The Court notes that the Complaint was filed prior to the September 1, 2023, amendment to the RCLA.

the RCLA and the DTPA where one statute does not provide explicit guidance with respect to exemplary damages.

In *Bruce v. Jim Walter Homes, Inc.*, the Texas Court of Appeals articulated similar concerns with an all-encompassing application of the RCLA. 943 S.W.2d 121 (Tex. App.—San Antonio 1997, writ denied). In *Bruce*, the plaintiffs brought various causes of action against a contractor for damages resulting from alleged defects in their house, including a cause of action for common law fraud. *Id*. at 123. The court held that a fraud cause of action and the RCLA "do not regulate the same activity", given that recovery for fraud is attributed to a plaintiff's reliance on an intentional misrepresentation. *Id*. In other words, "While the misrepresentation alleged in an action for fraud may be in regard to construction or a construction defect, the wrong sought to be redressed is **not the subject of the misrepresentation but the act of the misrepresentation itself**." *Id*. (emphasis added).

Likewise, the court in *Bruce* noted that the "remedies available under an action for fraud and an action under the RCLA are separate and distinct," that the RCLA limits the recovery of damages to those proximately caused by a construction defect. *Id*. Put simply, "The damages available in an action for fraud are not premised on the construction defect, but on the act of misrepresentation." *Id*. The court also disagreed with the contention that "as long as the injury suffered results in any way from a construction defect, the RCLA is triggered and will control," and instead held that the RCLA "cannot be interpreted so broadly as to abrogate common law causes of action for fraud simply because the alleged fraudulent representations were made by a contractor, to a homeowner, regarding a construction project." *Id*.

The underlying principle in *Bruce* applies equally here. While the Defendants' liability is very much founded upon the defective construction and/or repair of the Mondara, the liability

25

underlying the DTPA causes of action is not wholly relegated to defective construction or repair.

For example, the Court found the Defendants liable under both § 17.46(2) for "causing confusion

or misunderstanding as to the source, sponsorship, approval, or certification of goods or services,

and § 17.46(5) for "representing that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship,

approval, status, affiliation, or connection which the person does not." ECF No. 133 at 105–06.

Like *Bruce*, the subject matter underlying these violations is undoubtedly the construction and/or

repairs at the Mondara, but the violations themselves ultimately pertain to misrepresentations

surrounding the goods and services provided by the Defendants.

Similarly, the Defendants' liability under § 17.50(a)(3) for committing an unconscionable

action, while once again relating to the defective construction and/or repairs at the Mondara, is

based on what the Court found to be an unfair, purposeful obfuscation of information regarding

the defective nature of the Mondara's common elements. *Id*. at 114–15. Thus, while the subject

matter relating to the "façade" orchestrated by the Defendants is clearly connected to the design

and construction of the Mondara, the act of purposefully preventing the Plaintiff from obtaining

that information, in the Court's mind, is a separate and distinct injury.

In light of that distinction, the Court finds that the remedies attached to the DTPA causes

of action are reasonably separate and distinct as well, and are therefore not precluded by any

purported conflict with the RCLA. While the Court awarded the Plaintiff economic damages in

the form of reasonable cost of repairs for the construction defects at the Mondara, pursuant to the

RCLA, the exemplary damages awarded pursuant to the DTPA are separate and distinct from the

cost of repairs and are punitive in nature and reflective of the deceptive, misleading, and

unconscionable nature of the Defendants' violations. As previously referenced, the DTPA's

26

purpose is to provide a broadly-construed avenue of liability for consumers to pursue, and the

potential doubling or trebling of damages is directly connected to that purpose. Nothing in the

Liability Decision seeks to undercut the purpose behind the RCLA. However, the Court does not

believe that an equitable and reasonable interpretation of the RCLA should preclude a plaintiff

from recovering exemplary damages for a defendant's knowingly misleading and/or

unconscionable behavior, simply because the defendant also happens to be a contractor.

Therefore, the Court will deny the Motion to Reconsider as to this argument.[15]

### 3. *The RCLA causation standard should have been applied to the Plaintiff's DTPA claims.*

The Defendants' third argument is that the Court failed to apply the correct causation

standard under the RCLA with respect to the Plaintiff's DTPA claims. ECF No. 181 at 15. More

specifically, the Defendants contend that the RCLA requires a proximate causation standard for

any claimed injuries whereas the DTPA requires only a "producing cause" standard of causation,

which does not require a finding of foreseeability. *Compare* Tex. Prop. Code § 27.006 (stating that

liability under the RCLA arising from a construction defect requires that a contractor proximately

caused the defective condition at issue), *with* Tex. Bus. & Com. Code § 17.50(a) (stating that a

consumer may maintain a cause of action where the unlawful act is a producing cause of the

economic damages at issue). As noted in the previous section, both the RCLA and the DTPA

expressly state that, to the extent that a conflict arises between the two statutes, the RCLA controls.

*See* Tex. Prop. Code § 27.002(b); Tex. Bus. & Com. Code § 17.44(b).

The Defendants are correct that the Court improperly applied the wrong causation standard

to the Plaintiff's DTPA-related causes of action, given that the two standards of causation are in

---

[15] Although the Court will not amend any substantive findings with respect to this issue, it will amend the Liability Decision to provide further clarity regarding the distinction between awarding the Plaintiff economic damages pursuant to the RCLA, and awarding the Plaintiff exemplary damages (in the form of doubling the economic damages) pursuant to the DTPA.

conflict with each other. Accordingly, the Court will amend the Liability Decision to reflect a proper analysis under the proximate causation standard pursuant to § 27.006 of the RCLA and in connection with Count G of the Complaint.

Accordingly, the Court will grant in part the Motion to Reconsider and amend the Liability Decision in two respects: (1) proper application of the proximate causation standard under the RCLA; and (2) a substantive analysis and ruling as to whether the Defendants were the proximate cause of the Plaintiff's injuries with respect to their violations of the DTPA.[16]

### 4.   *Defendants Stillwater Capital and Stillwater Management should not be liable for breach of an implied warranty.*

The Defendants' fourth argument is that the Court committed a manifest error in law and/or fact by finding that Defendants Stillwater Capital and Stillwater Management are liable for breach of the implied warranty of good and workmanlike manner under Texas law. ECF No. 181 at 15–17. More specifically, the Defendants contend that the Plaintiff cannot assert a breach of implied warranty claim against Stillwater Capital and Stillwater Management because the implied warranty of good and workmanlike construction "arises out of a contract between a homebuilder and the purchaser." *Id.* at 16. Accordingly, the Court erred in finding the Defendants liable for breach of an implied warranty because "there is no purchase and sale agreement between any unit owner and either [Stillwater Capital or Stillwater Management]" and thus the only potential party that could have been liable was Stillwater Development—the builder. *Id.* at 16–17.

---

[16] The Court takes a moment to emphasize the extraordinary amount of leniency it is affording the Defendants in its reconsideration of this particular issue and is primarily doing so because the Court undoubtedly failed to apply the correct standard of causation. However, the Court could not identify a single instance in the transcripts for either the Liability Trial or the Damages Trial in which the Defendants even mentioned the RCLA and/or its causation standard, let alone argued for its application. Other than the Defendants' Proposed Findings of Fact and Conclusions of Law, which includes one generalized reference to § 27.006, they did not provide to the Court any pre-trial documents or argumentation with respect to the RCLA. While the Court agrees that application of the proper standard is paramount, the Defendants' utter failure to make this argument until now is problematic to say the least.

28

The Plaintiff counters that the Court "acted properly" in finding the Defendants liable for breach of an implied warranty because not only did the Defendants fail to establish that an implied warranty only arises via contract with Stillwater Development, but that the Defendants "repeatedly switched roles" on the construction project at the Mondara to the point where it became unclear which of the Stillwater-related entities were in fact the builder on the project. ECF No. 184 at 5. Moreover, the Plaintiff argues that these roles were "wholly inconsistent" and that both construction and repairs in connection with the Mondara project "were spread among all the Defendants and other related entities." *Id.* At bottom, "The Defendants' control over [Stillwater Development] and the work at the project and needed repairs all justify the Court's finding of joint liability." *Id.* at 7.

The Court agrees with the Plaintiff that the Defendants have not established a manifest error of law or fact on this issue. The Court went to painstaking lengths to not only detail the indistinguishable relationship of the Defendants and Stillwater Development, but further provided numerous references to the evidence and witness testimony underscoring the inability to discern which Stillwater-related parties were wearing which hats with respect to the construction and repairs at the Mondara. In fact, the Court's findings and analysis of same are so legion in the Liability Decision, that it need not provide a pin cite for reference.

The Court was clear that, based upon the evidence and testimony presented, the Defendants' breach of an implied warranty was inherently connected to and dependent upon the particularly murky relationship of the Stillwater entities. The Defendants' position with respect to the purchaser-builder privity of contract hinges on the faulty premise that anyone, including the Court, has any reasonable ability to delineate the respective roles of the Defendants in constructing and/or repairing the Mondara. The evidence suggests otherwise, and the Defendants do not provide

29

a sufficient basis for the Court to find that its findings in the Liability Decision constitute a manifest error.

Therefore, the Court denies the Motion to Reconsider on this argument.

### 5. *There was insufficient evidence of reliance to support a violation of § 17.50(a)(1) of the DTPA.*

The Defendants fifth argument is that the Court "erred in finding liability under § 17.50(a)(1) [of the DTPA] because there is no evidence of reliance by any original unit owner" with respect to the "laundry list" of possible violations enumerated under § 17.50(a)(1). ECF No. 181 at 17. The Defendants argue that the testimony provided by Karl Dial ("**Mr. Dial**") and Bruce Mamary ("**Mr. Mamary**") does not establish what "other original unit owners relied upon, if anything, when they purchased their unit." *Id.* at 17–18.

First, setting aside that the Defendants' argument on this point is unequivocally a rehashing of an argument pursued unsuccessfully by the Defendants in the Liability Trial, the element of reliance was expressly resolved by the Court in the Liability Decision. *See* ECF No. 133 at 106 ("[T]he Court finds the Plaintiff did rely on Elliot[t]'s soundproofing misrepresentation to its detriment by allowing the soundproofing issues to continue at the Mondara for over two years based on misinformation."). Second, and as will be discussed in more detail in a subsequent section, the Defendants' position depends upon a fundamental misunderstanding of who the Plaintiff is in this case—a finding the Court expressly made on page 11 of the Liability Decision. *See id*. at 11 ("Accordingly, and as reflected in the Complaint, the HOA—**on behalf of the unit owners**—is the Plaintiff in this matter.") (emphasis added).

The Defendants' insistence on requiring evidence of each individual unit owner at the Mondara is a red herring. However, even if the Court regarded the original unit owners as being the Plaintiff in this case, the Defendants readily acknowledge in the Motion to Reconsider that

there is **evidence of reliance by the original unit owners**, by virtue of the testimony of Mr. Mamary and Mr. Dial. ECF No. 181 at 17 (contending that there is no evidence of reliance "other than perhaps Mamary and Dial") (emphasis added). At bottom, the Defendants propose that, so long as the Court disregards all of the witnesses who provided evidence of reliance, then there is insufficient evidence of reliance to establish liability. The Court believes that the circular nature of that proposition speaks for itself in terms of its lack of merit.

Therefore, the Court denies the Motion to Reconsider on this basis.

### 6. There was insufficient evidence to support finding a violation of § 17.50(a)(2).

As their sixth argument, the Defendants contend that there was insufficient evidence for the Court to find that the Defendants breached an express or implied warranty pursuant to § 17.50(a)(2) of the DTPA. ECF No. 181 at 18–20. The Defendants' argument here is broken out into four separate points: (1) the Court's finding was improper because the Plaintiff does not allege any breach of an express or implied warranty under § 17.50(a)(2) in the Complaint; (2) a breach of an express warranty cannot be asserted against the Defendants because there is no evidence of any warranty made by the Defendants; (3) the Court erred in concluding that the Defendants are liable based upon unsigned documents and/or documents signed in a representative capacity; and (4) the Court's determination implicates an alter ego theory of liability—a count that is expressly reserved as a Fraud Claim for the bifurcated half of this case. *Id.*

First, although the Court agrees with the Defendants that Count G in the Complaint is pleaded in a manner more akin to the language in § 17.50(a)(1), the Defendants did not raise this issue before this Court at the Liability Trial. Additionally, the Defendants are plainly incorrect that "no pleading" supports a claim, finding of fact, or conclusion of law with respect to a violation of § 17.50(a)(2). ECF No. 181 at 18. The *Joint Pretrial Order* filed by the parties expressly provides

31

that the Defendants "breached express and implied warranty obligations" as one of the Plaintiff's proposed conclusions of law. ECF No. 90 at 13; *see also* ECF No. 89 at 25 (detailing that the Defendants' deceptive practices included a breach of the implied warranty of good and workmanlike manner).

Second, the Defendants' argument that § 17.50(a)(2) does not allow for a breach of express warranty claim to be asserted against "any person" is both unsupported by any case law and vague. The Defendants argue that the absence of the phrase "any person" in § 17.50(a)(2), in comparison to § 17.50(a)(1), (a)(3), and (a)(4), means that § 17.50(a)(2) is somehow limited in application to certain defendants, namely Mr. Elliott, Stillwater Capital, and Stillwater Management. *See* ECF No. 181 at 18–19. Likewise, the Defendants argue the scope of § 17.50(a)(2) is limited because "the DTPA does not create any warranty, express or implied; rather, it establishes a remedy for the breach of an independent warranty that must be proven." *Id.* at 18 (citing *Centex Homes v. Buecher*, 95 S.W.3d 266, 269 (Tex. 2002)). Accordingly, the Defendants, and Mr. Elliott, especially, cannot be liable for a breach of warranty under § 17.50(a)(2) because Mr. Elliott was not a named Defendant under Count D in the Complaint, the underlying cause of action that, according to the Defendants, establishes the liability for the remedy that § 17.50(a)(2) provides. *Id.* at 18–19.

The Defendants provide no legal support for this conclusion. Moreover, the Defendants' reliance on *Centex Homes* lacks merit. The statement cited by the Defendants is the *Centex Homes* court's **<u>summary of the plaintiff's argument</u>**—a position that is never addressed or adopted by the court. *See Centex Homes*, 95 S.W.3d at 269 ("Centex also argued . . . the DTPA does not create any implied warranty . . . but only provides an additional remedy for breach of implied warranties.") (emphasis added). To the extent the Defendants raise any other cognizable argument in this particular subsection, the Court does not find those arguments warrant any reconsideration.

32

Third, the Defendants contend that the Court's interpretation of the Warranty Deed granted to Mr. Mamary on December 21, 2016, is a manifest error of law and fact because the signature block in the document shows that Stillwater Development was the only grantor of the deed. *See* ECF No. 181 at 19; *see also* ECF No. 131-7, Defs.' Ex. S. In other words, they argue that the Court improperly imposed liability on the Defendants as representatives of Stillwater Development (i.e. the sole grantor), simply because the Defendants signed Mr. Mamary's Warranty Deed in their capacity as representatives of Stillwater Development. ECF No. 181 at 19–20. The Court disagrees with the Defendants that this interpretation constitutes a manifest error of law and fact. The Defendants once again overlook the Court's larger point in the above-referenced portion of the Liability Decision—in that the entirety of the documents cited, alongside Mr. Mamary's testimony, impose contractual obligations on the Defendants. The Defendants' argument is effectively a disagreement with the Court's interpretation of a contract. The Defendants do not provide any legal or evidentiary support to suggest the Court's interpretation of the Warranty Deed is manifestly incorrect. Disagreement with the outcome, without more, is not a sufficient legal basis for reconsideration.

Finally, the Defendants' argument regarding "premature" adjudication of the Plaintiff's alter ego cause of action is also not factually or legally supported in the Motion to Reconsider. The Defendants do not cite any portion of the Liability Decision where the Court found the Defendants to be alter ego entities and/or representatives of Stillwater Development. The Court will not reconsider a legal argument that the Defendants do not seriously attempt to make themselves.

Therefore, the Motion to Reconsider is denied on this argument in its entirety.

### 7. *There was insufficient evidence to support finding a violation of §* *17.50(a)(3).*

The Defendants' seventh argument is that the Court improperly found the Defendants liable for an unconscionable action and/or course of action pursuant to § 17.50(a)(3) of the DTPA. In doing so, the Defendants make two primary points: (1) the Complaint, once again, does not allege that the Defendants violated § 17.50(a)(3); and (2) there is no evidence that the elements for unconscionability can be met with respect to each individual unit owner. ECF No. 20–22.

The Court need not address the first argument, as it was not raised at trial. As to the second point, the Defendants either fundamentally misunderstand who the Plaintiff is in this case, or stubbornly refuse to recognize that the HOA is the Plaintiff. To argue that proof of the Defendants' unconscionable actions somehow requires evidence as to each unit owner's individual circumstances in relation to the Defendants' actions is ludicrous. As explained more fully below, the HOA is the "consumer" under the DTPA and the Plaintiff in this case. Thus, the evidence presented must be sufficient to show that the Defendants committed an unconscionable act with respect to the HOA and its rights in the common elements at the Mondara.

The Court is not inclined to rehash its unconscionability analysis in the Liability Decision, given that the crux of the Defendants' argument is that the Court "erred in ascribing the HOA's knowledge, ability, experience, and capacity (whatever that may be) to all unit owners." *Id.* at 22. However, the Court re-emphasizes what the Defendants include in their own Motion—an unconscionability claim requires proof of "**each consumer's** knowledge, ability, experience, or capacity." ECF No. 133 at 114 (emphasis added); ECF No. 181 at 22. Nothing in the statute or pertinent case law requires that, despite having established that the **HOA is the consumer**, the Court is required to take on the unnecessary, boundless, and, quite frankly, impossible task of

34

evaluating the elements with respect to dozens of unit owners at the Mondara before concluding

that the Defendants violated § 17.50(a)(3). At the very least, the Court is not aware of any manifest

error in law or fact in choosing to follow only what § 17.50(a)(3) necessitates instead.

Therefore, the Court denies the Motion to Reconsider on this argument.

### 8. The Plaintiff (i.e. the Mondara Homeowners' Association) should not have been found to be a consumer under the DTPA.

As previously mentioned, a running theme across many of the Defendants' arguments is

that the Plaintiff, Mondara Condominiums Association, does not meet the definition of a

"consumer" under § 17.45(4) of the DTPA. ECF No. 181 at 23. The Court has already

acknowledged the "delicacy" of granting the HOA consumer status in this case, and continues to

recognize that the relevant cases on consumer status under the DTPA, especially in the context of

an entity that is largely comprised of individuals (such as an HOA), is undoubtedly complex. ECF

No. 133 at 102. However, the Defendants' argument for reconsideration purposes is definitionally

a rehashing of a legal theory the Defendants not only could or should have pursued at the Liability

Trial, but in fact **did pursue unsuccessfully**. The Court is once again not inclined to re-evaluate

its Original Rulings simply because the Defendants disagree with the outcome.

Therefore, the Court denies the Motion to Reconsider on this argument.

### 9. The Plaintiff did not sufficiently identify which unit owners were the purported "plaintiffs."

In a similar argument, the Defendants argue that the Plaintiff failed to follow the Court's

directive in its oral bench ruling with respect to the Defendants' *Motion for Partial Summary*

*Judgment*—which the Court issued on October 22, 2024—in that the Plaintiff needed to clarify

whether the HOA or the unit owners, in some capacity, were the Plaintiff in this case. *See* ECF

No. 182 at 209–10. More specifically, the Defendants argue that the Court required "clarity" with

respect to whether the HOA, on behalf of the unit owners, or the unit owners themselves were

35

pursuing the causes of action at issue against the Defendants. *Id.* at 210.[17] Because the Plaintiff

allegedly "wholly failed" to follow the Court's directive, the Defendants argue that the Court

subsequently failed to identify in the Liability Decision "which unit owners, if any, are the

plaintiffs in this case," which therefore constitutes a manifest error of law and fact. ECF No. 181

at 23–24.

The Court recognizes that it cautioned the Plaintiff at prior hearings that the fluidity with

which it referenced who the alleged consumer is in this case would need to be concretely

established at trial. *See* ECF No. 182 at 209. The Court took issue with the fact that Plaintiff seemed

to be interchangeably referring to the "consumer" as both the HOA on its own, and the individual

unit owners with the HOA pursuing causes of action on their behalf pursuant to the Texas Uniform

Condominiums Act ("**TUCA**"). *Id.* at 209. Therefore, the Court's directive to the Plaintiff was to,

effectively, "pick a horse" and decide who the consumer was for purposes of the claims at issue.

*Id.* at 209–10. The Plaintiff did exactly that at the Liability Trial. *See* ECF No. 170 at 102:24–

103:2 ("So I think the cleanest and most sensible way to look at this, it's not that the unit owners

aren't consumers also, but that the . . . HOA is the consumer.").

At this juncture, as evidenced in the Liability Decision, the Court remains neither confused

nor unsure of who the Plaintiff and consumer is in this case. The evidence affirmatively shows that

the answer to both questions is the same—the HOA.[18] Any remaining "confusion" is better likened

to the Defendants' obstinance at this point.

---

[17] The Court notes that the ruling included in the Defendants' Appendix to the Motion to Reconsider is an unpublished draft copy of the Court's oral ruling, which was provided to the parties upon request, rather than an official transcript. The inclusion of same as support is outside of the record and improper.

[18] The HOA is the entity with the *power* to enforce the DCCR's provisions and serve as the unit owners' attorney-in-fact in § 9.8.6, among other rights. Pl.'s Ex. 504, 61–62.

Second, the Court takes issue with the Defendants' contention that they have been "deprived of due process" by being "forced to defend themselves against substantial claims asserted by faceless and nameless unit owners when Plaintiff's pleadings do not even hint that any of them is a party." ECF No. 181 at 24. Plainly, this case revolves around allegations that span over a decade and has undergone two complete trials at both the state and federal level. The notion that the Defendants have been purportedly blindsided with regard to the Plaintiff's true identity strays awfully close to willful ignorance, as a cursory glance at the caption of the Complaint resolves this issue. It seems fairly obvious to the Court that the reason why the unit owners at the Mondara seemingly remain "faceless and nameless" to the Defendants is because they are in fact **not the plaintiffs in this case**. Ironically, the Defendants' grievance with the Plaintiff's failure to even hint at which unit owners are parties to this case is a glaring clue all on its own in that maybe, just maybe, the unit owners' absence from any pleadings is not a ploy by the Plaintiff but rather the answer to the Defendants' question. The Defendants' undying chase after procedural ghosts is not a compelling basis for reconsideration.

Therefore, the Court denies the Motion to Reconsider on this argument.

### 10. The Defendants adequately raised the $500,000 exemption under § 17.49 of the DTPA.

The Defendants' tenth argument is that the Court erred in finding that the Defendants waived the exemption under § 17.49(g) of the DTPA, which precludes application of a DTPA cause of action "arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence." ECF No. 181 at 25–26; *see also* Tex. Bus. & Com. Code § 17.49(g). In support of the argument, the Defendants provide numerous examples of instances in which the Defendants purport to have raised the exemption under § 17.49(g), including

37

the Defendants' *Third Amended Answer, Objections, and Motions to Dismiss and Show Authority* (the "**Answer**") and transcripts of the Liability Trial.[19]

Here, the Defendants are correct to the extent that the Court erred in finding that the Defendants waived any argument pursuant to § 17.49(g). As noted by the Defendants, the Answer provides that the Plaintiff's claims are barred by "the exemptions to the [DTPA] found in . . . § 17.49," and that the Defendants' *Proposed Findings of Fact and Conclusions of Law* contains a nearly identical assertion. *See* ECF No. 58-2 at 241; *see also* ECF No. 91 at 9.[20] Therefore, to the extent that the Liability Decision requires an amended finding on this issue, the Court will provide one.[21]

However, the Court does not find that the Defendants' argument warrants reconsideration under Rules 52 and 59 to the extent the Defendants argue that § 17.49(g) **applies**. While the Defendants may not have waived the argument under § 17.49(g), there is little to no record evidencing how that exemption applies to the Plaintiff in this case, i.e. the HOA. As referenced in the Motion to Reconsider, the Defendants' argument on this point is not only that the sale prices of the individual units exceed $500,000, but that testimony from Mr. Mamary indicated several of

---

[19] The Court notes for the record that, up to entry of the Liability Decision, the Court did not have access to transcripts of the Liability Trial other than transcripts for October 31 and November 1, 2024. *See* ECF Nos. 123–124. Accordingly, while the Court had access to audio recordings of the Liability Trial (as evidenced in the Liability Decision) the excerpts from transcripts utilized by the Defendants with respect to the $500,000 exemption were not requested by the parties, and therefore not accessible to the Court, until well after entry of the Liability Decision. *See* ECF Nos. 141–43, 169–70.

[20] Likewise, the Court notes that in closing arguments, counsel for the Defendants generally alluded to the § 17.49(g) exemption. *See* ECF No. 170 at 149:22–149:24 ("So what we really have here is that every one of these units is over [$]500,000.").

[21] The Court takes a moment to emphasize the concern it has with the Defendants' efforts to uncover errors in the Court's Original Rulings by gesturing towards the wide swath of generalized affirmative defenses in the Answer or in the *Proposed Findings of Fact and Conclusions of Law*, and that through burying such arguments in a pleading, the Defendants have evaded any possibility of having waived those arguments. For clarity, the Defendants provide 118 Findings of Fact and Conclusions of Law, many of which were never even referenced at trial and/or were no longer applicable to the case, including act of god, laches, failure of presentment, business judgment rule, capacity and standing under TUCA, and the "independent contractor rule." ECF No. 91. The Defendants never seriously pursued many of these arguments.

the units were purportedly leased to other individuals establishing that those units could not be the owners' "primary residence." *See generally* ECF No. 181 at 25–26.

While the argument here is understandably close, given the complexities of a DTPA claim pursued by an HOA consumer, the Court does not believe that the Defendants have provided sufficient evidence to show why § 17.49(g) applies to the **HOA specifically**. The Defendants' continued misconception of who the consumer is in this case leads the Defendants down the wrong path and towards the wrong consumer. Although the transactions may exceed $500,000, § 17.49(g) also provides an exception within the text that it does not apply with respect to any transactions of a consumer's "primary residence." Tex. Bus. & Com. Code § 17.49(g). The Defendants did not provide sufficient evidence to explain how or why § 17.49(g) is applicable to the HOA as a consumer, or how the Mondara does not constitute the HOA's "primary residence." On the contrary, the evidence showed that the Mondara is the primary residence of most of the unit owners and is itself a **residential** living community. *See* Pl.'s Ex. 583 at 3 (providing a description of the Mondara as a "residential luxury condominium project"). Without evidence to the contrary, the Court does not find a manifest error of law or fact.

Therefore, the Defendants' argument on this point is granted in part to the extent the Court erred in determining that the Defendants waived the § 17.49(g) exemption, but denied in part to the extent that the Defendants provided sufficient evidence that § 17.49(g) applies in this case.

### 11. The Court failed to properly apply the proportionate responsibility statute.

The Defendants' eleventh argument is that the Court erred in its application of § 33.003 of the Texas Civil Practice and Remedies Code in finding the injuries to the Plaintiff to be indivisible for purposes of applying proportionate responsibility to the Defendants. ECF No. 26–27. Here, the Court does not find that, based on the Defendants' arguments, a manifest error of law or fact exists

39

in the Court's interpretation of Chapter 33 of the Texas Civil Practice and Remedies Code, nor its application. In essence, the Defendants supply the Court with a myriad of legal theories that they could, or should, have provided at the Liability Trial via pre-trial briefing but did not. Likewise, to the extent that the Defendants raised the argument at the Liability Trial (which they did unsuccessfully), the arguments in the Motion to Reconsider are simply a rehashing of what the Court already addressed in the Liability Decision. *See* ECF No. 133 at 126–29.

Therefore, the Court denies the Motion to Reconsider on this argument.

### 12. *The economic loss rule under Texas law precludes findings against the Defendants with respect to the Plaintiff's negligent misrepresentation and DTPA claims.*

The Defendants' twelfth argument is that the Court, while finding that the economic loss rule barred the Plaintiff negligence cause of action under Counts A and B, should have found that the economic loss rule similarly precluded the Plaintiff's negligent misrepresentation claim under Count F and the DTPA claims under Count G. ECF No. 181 at 27–28. The Court provided extensive reasoning for why it did not apply the economic loss doctrine to the remaining causes of action in the Complaint. *See* ECF No. 133 at 84–107 (discussing whether the economic loss rule should or should not apply to the Plaintiff's various causes of action). The Defendants' arguments on this point are simply a rehashing of legal arguments and/or theories the Court has already addressed.

Therefore, the Court denies the Motion to Reconsider on this argument.

### 13. *The applicable statute of limitations bars the Plaintiff's causes of action.*

The Defendants' thirteenth argument is that the Court should amend its Original Rulings to reflect that the statute of limitations on the Plaintiff's causes of action began to run in early 2018, and that the Court improperly determined that the applicable statute of limitations did not bar the Plaintiff from bringing its claims. ECF No. 181 at 28–30. Despite a lengthy argument by

40

the Defendants in the Motion to Reconsider about why the Court was incorrect on this issue, such argument is also merely a rehashing of a legal argument the Court previously addressed at length in the Liability Decision. *See* ECF No. 133 at 118–25. While the Defendants may disagree with the Court's factual findings and legal conclusions, nothing in the Motion to Reconsider points to facts or relevant case law that the Court wholly failed to consider would constitute a manifest error of law or fact.

Therefore, the Court denies the Motion to Reconsider on this argument.

### 14. The Court improperly awarded the Plaintiff attorney's fees.

The Defendants' final argument is that the Court manifestly erred in awarding the Plaintiff attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code. ECF No. 181 at 30. In support of the argument, the Defendants make three points: (1) attorney's fees cannot be recovered if no damages are recovered in connection with the underlying causes of action: (2) Chapter 38 does not permit an award of attorney's fees against limited liability companies; and (3) Chapter 38 does not permit attorney's fees if there is no underlying contract. *Id.*

The Plaintiff contends that the Defendants' arguments on this issue are moot because: (1) the Final Judgment does not state that all of the Defendants are liable to the Plaintiff for attorney's fees; (2) the 2020 version of Chapter 38—which the Defendants contend is the applicable statute at the time of filing—provides for the recovery of attorney's fees against individuals, thus allowing the Plaintiff to recover against Mr. Elliott; and (3) the Plaintiff was awarded attorney's fees under the DTPA as well, and therefore any argument as to Chapter 38's applicability is mooted. ECF No. 192 at 9.

The Court ultimately agrees with the Plaintiff and finds that the Defendants have not provided any sufficient basis for finding a manifest error of law or fact in connection with the

41

Court's award of attorney's fees. First, the Defendants' point with respect to damages is entirely dependent on their other arguments related to liability, which were rejected by the Court. Second, not only did the Defendants fail to argue at the Damages Trial that no contract existed for purposes of awarding attorney's fees, the position on this point is also dependent upon the Court eroding its numerous findings of contractual privity between the Defendants and the Plaintiff. As explained above, the Defendants have provided no justification for finding that the Court manifestly erred in finding contractual privity between the parties. Finally, as to the LLC-related argument, Chapter 38 allows for recovery of attorney's fees from "an individual" as well as an organization. Tex. Civ. Prac. & Rem. Code § 38.001(b) (amended Sept. 1, 2021). Accordingly, whether the Plaintiff could recover attorney's fees from Stillwater Capital or Stillwater Management is moot, given that it can seek recovery of its attorney's fees against Mr. Elliott no matter which version of Chapter 38 applies.[22]

Therefore, the Court denies the Motion to Reconsider on this argument.

For the reasons set forth above and those set forth in the Liability Decision, which is incorporated herein by reference, it is hereby

**ORDERED** that the Plaintiff's *Unopposed Motion for Correction Under Federal Rule of Civil Procedure 60* is **GRANTED**; it is further

---

[22] Although the Court will deny the Motion to Reconsider on this argument, it will amend the Damages Decision and Final Judgment to provide further clarity with respect to the award of attorney's fees to the Plaintiff pursuant to § 17.50(d) of the DTPA (in conjunction with Chapter 38) rather than § 27.004(g)(6) of the RCLA. As the Court will further note in the amendments to the Original Rulings, there is no conflict between the DTPA and the RCLA with regard to the Plaintiff's ability to recover reasonable and necessary attorney's fees under either statute. Thus, given that the Plaintiff requested attorney's fees pursuant to the DTPA, the Court did not find it necessary to determine whether the Plaintiff would likewise be entitled to attorney's fees under the RCLA. Nevertheless, clarification on this issue will be provided.

**ORDERED** that the *Defendants' Motion to Clarify Non-Final Judgment Under Federal Rule of Civil Procedure 54(b)* is **GRANTED IN PART** to the extent that the Court will amend the Final Judgment and add additional language that "no just reason for delay" exists; it is further

**ORDERED** that the *Defendants' Motion to Clarify Non-Final Judgment Under Federal Rule of Civil Procedure 54(b)* is **DENIED IN PART** to the extent that the Defendants request the Final Judgment be deemed interlocutory; it is further

**ORDERED** that the *Defendants' Motion Under Federal Rules of Civil Procedure 52 and 59* is **GRANTED IN PART** and the Court will amend its Original Rulings with respect to the following: (1) amending the Liability Decision to correct the designation of the Plaintiff's unsecured claim pursuant to the 9019 Order; (2) amending the Original Rulings to remove a finding of liability pursuant to § 17.46(b)(7) of the DTPA, specifically; (3) amending the Liability Decision to provide a proximate cause analysis with respect to the Defendants pursuant to § 27.006 of the RCLA; (4) amending the Liability Decision to remove any reference that the Defendants waived their argument with respect to the exemption under § 17.49(g) of the DTPA; and (5) amending the Damages Decision and Final Judgment to provide further clarity as to which statutes the Plaintiff is being awarded reasonable and necessary attorney's fees pursuant to;[23] it is further

**ORDERED** that all other arguments in the *Defendants' Motion Under Federal Rules of Civil Procedure 52 and 59* are **DENIED**; and it is further

**ORDERED** that the Court will enter an amended Original Rulings concurrent with entry of this Order.

**### END OF ORDER ###**

---

[23] To reiterate, while the Court is not granting the Motion to Reconsider with respect to the Defendants' argument regarding the RCLA's purported exemplary damages limitation, the Court will amend the Liability Decision to provide clarity as to why and how it is awarding the Plaintiff economic damages pursuant to the RCLA and exemplary damages pursuant to the DTPA.